IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KPI BRIDGE OIL SINGAPORE
PTE LTD.,

    Plaintiff,

  v.

BERLIAN LAJU TANKER TBK PT,
and MARINA PARTA WATI
SHIPPING PTE LTD.,

    Defendants.

No. C 12-00710 WHA

**AMENDED ORDER HOLDING DEFENDANTS' MOTIONS TO VACATE MARITIME ATTACHMENT AND TO DISMISS IN ABEYANCE PENDING JURISDICTIONAL DISCOVERY**

## INTRODUCTION

In this action for breach of maritime contract, defendants separately move to vacate an order of attachment and dismiss plaintiff's complaint. For the reasons stated below, the motions are **HELD IN ABEYANCE PENDING LIMITED JURISDICTIONAL DISCOVERY.**

## STATEMENT

Plaintiff KPI Bridge Oil Singapore PTE Ltd. ("KPI") is a foreign bunker supply corporation. Both Berlian Laju Tanker TBK PT ("Berlian") and Marina Partawati Shipping ("Marina") are organized under the laws of Singapore. Neither has a duly appointed agent for service of process in this district. In February 2012, plaintiff filed a complaint pursuant to Supplemental Admiralty Rule B seeking maritime attachment and garnishment of the vessel M/T Partawati.

Plaintiff's verified complaint alleged the following: Between October 2011 and February 2012, KPI entered into no less than seventeen contracts with defendant Berlian for the sale and delivery of bunkers. Despite repeated demands, Berlian failed to pay KPI as required under the contracts. The total amount due at the time plaintiff filed its complaint was $2,231,958.28 (Compl. ¶¶ 1–17, Exh. 1).

Marina was not party to any of the alleged contracts but is the registered owner of the M/T Partawati. The M/T Partawati was not among the vessels supplied with bunker under the contracts in question. To support a Rule B attachment, the complaint alleged the M/T Partawati was an asset of defendant Berlian based on its relationship with Marina. Berlian is the manager of the vessel through a bareboat charter agreement between its subsidiary, Pradapa Maritime Pte Ltd. and Marina (Compl. Exh. 6 at 6, 9). A bareboat or demise charter is "tantamount to but just short of" ownership. *Guzman v. Pichrilo*, 369 U.S. 698 (1962). Plaintiff does not dispute that Berlian is not the registered owner of the vessel. To support its contention that the M/T Partawati was the property of Berlian, plaintiff's verified complaint alleged there existed "such unity of ownership and interest between [Berlian and Marina] that no separation exist[ed] between them" (Compl. ¶ 21). Plaintiff's complaint did not expressly refer to alter ego status.

On February 14, the M/T Partawati arrived in the Port of Richmond. The next day, this action was reassigned to the undersigned and an *ex parte* motion hearing was held on an emergency application to seize the vessel. As a result of that hearing, a writ of attachment and garnishment was issued (Dkt. Nos. 13, 26).

On February 16, the parties stipulated for release of the vessel in exchange for security of $2,518,919.16, the amount allegedly owed by Berlian under the contracts. Defendants now separately move to vacate the maritime attachment and release the security pursuant to Supplemental Admiralty Rules E(2) and E(4)(f).

**ANALYSIS**

**1.  LEGAL STANDARD.**

Jurisdiction over defendants is *quasi in rem*, resting on maritime attachment of the security in place of the M/T Partawati. Orders of maritime attachment "may be [and normally

are] requested and granted *ex parte*, though notice of the attachment to the defendant via appropriate service is required." Ownership of the vessel by the defendant is a "necessary prerequisite of attachment." *Interpool Ltd. v. Char Yigh Marine S.A.,* 890 F.2d 1453, 1456 (9th Cir. 1989).

Vacatuer of maritime attachment is governed by Rule E(4)(f), which states:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules . . . .

Fed R Civ P., Adm. Supp. Rule E(4)(f). The purpose of a Rule E(4)(f) hearing is not to "resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds" for the attachment. *Del Mar Seafoods, Inc. v. Cohen*, No. 07-02952, 2007 WL 2385114 at *3 (Alsup, J.) (quoting *Lion de Mer v. M/V Loretta V*, 1998 WL 307077 at * 2 (D. Md. Apr. 3, 1998 (Legg, J.)). To sustain a maritime attachment pursuant to Rule B, the plaintiff must show: (1) the plaintiff has a valid *prima facie* admiralty claim against defendants; (2) the defendants cannot be found within the district; (3) property of the defendants can be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Equatorial Marine Fuel Mgmt. Pte. Ltd. v. MISC Berhad*, 591 F.3d 1208, 1201 (9th Cir. 2010). At this stage, our plaintiff has the burden to show reasonable grounds for the attachment. *Ibid*.

The showing required in a "reasonable grounds" analysis has been compared to the standard of probable cause. *Budisukma v. Permai SDN BHD v. N.M.K. Products & Agencies Lanka Ltd.*, 606 F. Supp. 2d 391, 399 (2d. Cir. 2009) (citing *Draper v. United States*, 358 U.S. 307, 311 (1959)). This "probable cause" requirement "translates roughly to requiring that plaintiff show entitlement to a maritime lien." *Del Mar*, 2007 WL 2385114 at *3.

### 2. **ALTER EGO ALLEGATIONS.**

Defendants contend plaintiff failed to meet its burden of showing the third condition for attachment — that property *of defendant Berlian* could be found within the district. Defendants argue that plaintiff has not shown reasonable grounds for its contention that Marina

3

and Berlian are alter egos. Because plaintiff asserts no breach of maritime contract against Marina, jurisdiction over defendants is premised on such a showing.

Federal courts sitting in admiralty apply federal common law when examining corporate identity. While corporate separateness is generally respected, admiralty courts may pierce the corporate veil in order to reach the "alter egos" of a corporate defendant. Our court of appeals, applying federal common law, has held that disregard of corporate separateness "requires that the controlling corporate entity exercise total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." *Chan v. Society Expeditions, Inc*., 123 F.3d 1287, 1294 (9th Cir. 1997). Mere common ownership is insufficient to support disregard of the corporate form. Bare assertions of alter ego status, without more, do not warrant attachment. *Stevedoring Services of America v. Ancora Transport, N.V.*, 59 F.3d 879, 883 (9th Cir. 1995).

Plaintiff's complaint alleged that defendants "pursued business as a single business entity, confusing and commingling assets, holding themselves out to the public to be a single business and a group . . . " Plaintiff appended several documents to its complaint, including: (1) Berlin's "fleet list," as displayed on its website; (2) a copy of Berlian's 2010 business report, dated July 2011, indicating ownership of the M/T Partawati; (3) a copy of a third-party invoice addressed to "M/T Parawati and/or master/owner and/or owners and/or charterers and/or managers and/or operators and/or [Berlian]"; (4) online database records showing Marina's contact address as "Care of [Berlian]" at Jalan Abdul Mu'is 40, Jakarta 10160 Indonesia, the same address is listed for Berlian; (5) a copy of an "Offer Information Statement" dated June 30, 2010 listing M/T Parawati as among Berlian's vessels "currently under construction"; (6) a photograph of the vessel bearing Berlian's emblem; and (7) a copy of the Certificate of Fiscal Responsibility from the United States Coast Guard for the M/T Partawati, issued to Pradapa (Compl. Exhs. 5–12).

Pursuant to Rule E(4)(f), defendants have each provided evidence to support their contention that Marina and Berlian are separate corporate entities and not alter egos. Defendants' submissions show that Marina is a wholly-owned subsidiary of Marina Leasing

4

1  Limited, which is in turn a wholly owned subsidiary of Standard Chartered Leasing Group
2  Limited, which is in turn a wholly-owned subsidiary of Standard Chartered Bank (Hong Kong)
3  Limited, which is in turn a wholly-owned subsidiary of Standard Chartered Bank PLC.
4  Marina's sole purpose is to own the M/T Partawati. Berlian belongs to the Berlian Group
5  of Companies, which is not a subsidiary of any of the Standard Chartered Bank entities.
6  The companies do not share officers or directors. In March 2011, around the same time as
7  its incorporation, Marina purchased the vessel, though it is not stated where from. In the same
8  month, Marina entered into a bareboat charter agreement with Pradapa (Susanto Decl. ¶¶ 7–21,
9  Exh. 9; Surya Decl. ¶ 5). These documents controvert some but not all of plaintiff's alter ego
10 allegations.

11  The parties dispute whether evidence gathered by plaintiff after the time of the
12 attachment proceeding may be considered on a motion to vacate. In response to defendants'
13 motions, plaintiff submitted over 400 pages of supporting documents. It is well established that
14 defendant's ownership of the vessel must be determined as of the time of attachment.
15 *See, e.g. Interpool,* 890 F.2d at 1459. On a Rule E(4)(f) motion, however, courts generally
16 consider additional evidence supplied by the plaintiff to support its existing claims.
17 "[I]t comports with due process to permit the initial seizure on sworn *ex parte* documents,
18 followed by the early opportunity to put the creditor to his proof." *Equatorial*, 591 F.3d
19 at 1210–1211 (quoting *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 609 (1974)).

20  Plaintiff's opposition exhibits include the following: (1) correspondence between
21 counsel following attachment of the vessel; (2) additional maritime database printouts showing
22 overlapping addresses for Marina and Berlian; (3) excerpts from the website of BLT Chembulk,
23 a subsidiary of Berlian; (4) copies of KPI invoices for bunker supply to the M/T Partawati,
24 which were paid by Berlian;[*] (5) photographs of the office building listed as Marina's corporate
25 address; (6) Berlian's "Consolidated Financial Statement for 2011" indicating the sale of vessels,
26 including the M/T Partawati; (7) a copy of the cover note for hull and machinery insurance for

---

[*] These invoices are not those allegedly due in this action, but are appended to show payments made by Berlian.

5

the M/T Partawati, indicating coverage for Marina, Pradapa and Berlian; and (8) copies of reports from the Singapore Accounting and Corporate Regulatory Authority (Atkinson Decl. Exhs. 1–15; Koosler Decl. Exhs. 1–8). Defendants object to much of the evidence presented by plaintiff on several grounds (Dkt. Nos. 50, 52).

Our court of appeals has not set out which factors must be present to warrant piercing the corporate veil. Plaintiff shows evidence of a relationship between Marina and Berlian such that Berlian exercised complete control over Marina's single asset. Defendants do not dispute this control, but provide evidence that the relationship was governed by an arms-length agreement between the entities. In light of the fact-intensive inquiry before it, this order **HOLDS DEFENDANTS' MOTIONS IN ABEYANCE** pending limited additional factual inquiry into plaintiff's alter ego claims.

**3.     REQUEST FOR LEAVE TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY.**

Plaintiff seeks leave to conduct limited discovery into the relationship between Marina and Berlian, to support its alter ego allegations. Our court of appeals has held that, in general, "where further discovery on [the] issue might well demonstrate facts sufficient to constitute a basis for jurisdiction," denial of jurisdictional discovery will be an abuse of discretion. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). Without ruling on defendants' evidentiary objections, this order finds cause to allow limited jurisdictional discovery on the issue of defendants' alleged alter ego relationship.

Defendants argue that leave to pursue discovery is not permitted in a Rule E(4)(f) proceeding. At the hearing, defendants cited *Equatorial* for the proposition that deficiencies in a complaint seeking maritime attachment cannot be cured by way of further discovery. This order finds *Equatorial* does not preclude courts sitting in admiralty from granting jurisdictional discovery.

In *Equatorial*, the district court granted the plaintiff's *ex parte* application for maritime attachment on the basis of an alleged breach of maritime contract. Like here, the complaint alleged the defendant had failed to pay for bunkers delivered. In the Rule E(4)(f) proceeding,

6

the defendant provided evidence that it had never contracted with the plaintiff at all. Instead, the defendant contracted with a bunker-trader, who in turn purchased the bunkers from the plaintiff. The defendant's evidence showed that it had paid the trader, after which time the trader became insolvent and failed to pay the plaintiff. *Equatorial*, 591 F.3d at 1209–1210.

The district court listed the documents it reviewed in making its Rule E(4)(f) determination, which included "documents attached to [plaintiff]'s complaint *and its response to the motion* to vacate." *Id*. at 1210–1211 (emphasis added). On appeal, no error assigned to the district court's consideration of documents provided after the time of the complaint. Our court of appeals only declined to consider the plaintiff's *new* contention that there was an agency relationship between the defendant, because that assertion was not raised in the complaint, which plaintiff never sought to amend. *Id*. at 1211.

Here, plaintiff expressly alleged in its complaint that Berlian dominated and controlled Marina. This portion of the *Equatorial* opinion is inapposite here — our plaintiff does not seek to add to the complaint but rather to provide support for its existing contentions.

Defendants also rely on the statement in *Equatorial* that "once [the defendant] came forward with evidence showing that it contracted with [the trader], not [the plaintiff], and paid [the trader] for the bunkers, [the plaintiff] needed to do something to contradict this showing. Because [the plaintiff] failed to do this, the district court properly vacated the attachment." *Ibid*. But here defendants' evidence does not preclude a finding for plaintiff, and does not squarely answer plaintiff's allegations. A fact-intensive alter ego inquiry is distinguishable from a dispute over the mere existence of a contract. Defendants have not so completely derailed plaintiff's alter ego allegations that further inquiry would be unwarranted. Nowhere does the *Equatorial* decision pronounce that discovery is in all cases unavailable.

Furthermore, contrary to defendants' contention at the hearing, the complaint contains more than "only one conclusory allegation." The verified complaint claims that Berlian received and paid invoices for Marina, the companies had a common business address, Berlian provided financial assurance for the M/T Partawati, and Berlian stated in several documents that it owned the vessel (Compl. ¶¶ 26–31). Plaintiff is not tasked, at this stage, with proving the merits

7

of its claims, but rather their sufficiency. Absent express direction to the contrary, there is no reason to restrict the discretionary grant of limited jurisdictional discovery on the facts presented here.

At very least, plaintiff has shown that Berlian *may* have previously owned the M/T Parawati and subsequently sold the vessel to Marina with a lease-back arrangement, which transaction seemingly coincided with the time of the ship's construction, as well as Marina's incorporation. If proven, a transaction of this kind is not, as argued by defendants at the hearing, akin to leasing a car from the dealer. Notably, defendants are mum on the details of the vessel's purchase. Plaintiff's contention that Berlian controlled or primarily transacted the business of Marina, whose only asset is the vessel itself, thus does not appear entirely baseless. Plaintiff has evinced enough support for its alter ego allegations that additional jurisdictional discovery may lead to facts sufficient to support jurisdiction by maritime attachment.

## CONCLUSION

For the foregoing reasons, defendants' motions to vacate maritime attachment and to dismiss plaintiff's complaint are **HELD IN ABEYANCE** pending limited jurisdictional discovery. Plaintiff may engage in the following jurisdictional discovery: (1) ten reasonably narrow document requests, (2) twenty reasonably narrow interrogatories (no subparts will be allowed), (3) four depositions not to last longer than seven hours each, and (4) no requests for admissions. Defendants must cooperate in the discovery or else the deadlines may be extended. With the benefit of the supplemental discovery and any other investigation, plaintiff must then show why defendants' motions should not be granted and the security released **BY *NOON ON JULY 19, 2012*.** Defendants may then file responses **BY *NOON ON AUGUST 2, 2012*.** The issue will then be decided on the papers unless a hearing is deemed advisable.

**IT IS SO ORDERED.**

Dated: March 20, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8